**UTAH VALLEY BANK, a Utah bank corporation, Plaintiff and Appellant,**

v.

**Paul TANNER dba Paul Tanner Homes and Dan McGraw, Defendants and Respondents.**

**No. 17302.**

Supreme Court of Utah.

Sept. 17, 1981.

Kenneth A. Rushton, Lehi, Craig S. Cook, Salt Lake City, for plaintiff and appellant.

Paul J. Merrill, Spanish Fork, for defendants and respondents.

HALL, Chief Justice:

Plaintiff Utah Valley Bank appeals the judgment of the district court which denied recovery of the balance due and owing on a promissory note from defendant Dan McGraw.[1] The issue presented by this appeal is whether the court erred in its determination that the promissory note was ambiguous in its terms necessitating the introduction of extrinsic evidence to resolve the ambiguity. The following is a reproduction of pertinent portions of the note executed by the parties:

---

1. The record does not reflect that the defendant Paul Tanner was ever served with process; in any event, he made no appearance at trial, and judgment was entered only as against Dan McGraw.

For value received the undersigned (hereinafter jointly and severally referred to as "Borrower"):

<u>Paul Tanner Homes & Dan McGraw</u>
(Last Name First)

1. Acknowledges that in conjunction herewith, an obligation was created in favor of Utah Valley Bank ("Bank" hereafter) in the principal amount of $ <u>10,500.00</u> and/or

2. The Borrower, jointly and severally promises to pay to Utah Valley Bank

\* \* \*

If this instrument is signed by more than one Borrower, the obligations of Borrowers shall be joint and several. THE RIGHTS OR PRIVILEGES GRANTED BANK INCLUDING, WITHOUT LIMITATION, ALL REMEDIES AND RIGHTS OF SET OFF) ARE ALSO GRANTED TO BANK'S ASSIGNEE. All words herein shall be construed to be of such gender and number as the circumstances require and the references to Borrower is joint and several and includes all persons primarily or secondarily liable hereunder.

\* \* \*

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED LEGIBLE COPY OF THIS AGREEMENT AND EXECUTES THIS AGREEMENT AS OF THIS <u>19th</u> DAY OF <u>May</u>, <u>1978</u>.

Paul Tanner Homes By:

UTAH VALLEY BANK

By

Borrower

Borrower

<u>1178 South State</u> Orem, Utah 84057
Address

---

The trial judge aptly observed that the initial recital in the note designates Paul Tanner Homes and Dan McGraw as the "undersigned" and as "Borrower," "jointly and severally." However, he found an inconsistency to exist between the initial recital and the signature recital, he taking the view that the latter was susceptible to an interpretation that both Paul Tanner and Dan McGraw signed only on behalf of Paul Tanner Homes, and not in their individual capacities as joint and several borrowers. He thereupon authorized the introduction of extrinsic evidence.

The evidence presented is not generally in dispute. Both Tanner and McGraw executed the note in the presence of the bank's agent, Robert Chatfield. The proceeds of the loan went solely to Paul Tanner in the form of two checks, one in the amount of $8,000 payable to Paul Tanner Homes and Dan McGraw, and the other in the amount of $2,500 payable to Paul Tanner Homes and Central Bank. Each of the checks was endorsed "Paul Tanner Homes by Paul Tanner" and Dan McGraw endorsed the check drawn jointly in his favor.

McGraw was not an employee of or otherwise affiliated with Paul Tanner Homes, but was a subcontractor working on houses under construction by Paul Tanner Homes. McGraw was purchasing from Paul Tanner Homes the equipment listed as collateral in the note, making monthly installments thereon.

The only significant dispute in the evidence pertains to what motivated McGraw to sign the note. McGraw testified that he signed because he was persuaded to do so by Tanner and because the bank required him to assent to the pledge of his interest in the equipment listed as collateral for the loan. He further testified that Chatfield assured him that only Tanner had liability for payment on the note. Conversely, Chatfield testified that although McGraw's interest in the equipment was to be used as collateral for the loan, he nevertheless was informed that he was also jointly liable with Tanner for repayment of the loan. The trial court found, *inter alia*, as follows:

> ... that McGraw did not intend to sign individually for the note, but only to give up whatever interest he had in the collateral the bank wanted in the event resort was made to satisfy the note.

and concluded that:

> ... the claim of the plaintiff should be dismissed as to Dan McGraw personally reserving to the bank any interest Dan McGraw has in the collateral, ....

■ The basic rule of contract interpretation is that the intent of the parties is to be ascertained from the content of the instrument itself,[2] the rationale for the rule being to preserve the sanctity of written instruments. Each contract provision is to be considered in relation to all of the others,

---

2. *Continental Bank and Trust Company v. Bybee*, 6 Utah 2d 98, 306 P.2d 773 (1957).

with a view toward giving effect to all and ignoring none.[3] It is only when an ambiguity exists which cannot be reconciled by an objective and reasonable interpretation of the contract as a whole that resort may be had to the use of extrinsic evidence.[4]

█ Applying the foregoing legal principles to the case at hand, we deem the trial judge to have erred in permitting the introduction of extrinsic evidence.

The note itself, when viewed objectively and reasonably, reflects that McGraw signed in his individual capacity as a co-maker of the note and not in a representative capacity for Paul Tanner Homes. This is to be seen in that throughout the text of the note, Paul Tanner Homes and Dan McGraw are consistently referred to in terms of their joint and several liability. The very first recital in the note identifies Paul Tanner Homes *and* Dan McGraw in the *conjunctive*, designates them as the "undersigned," and refers to them "jointly and severally" as "Borrower." Paragraph "2" of the note recites that "Borrower, jointly and severally promises to pay . . ." Further on, the note recites, "If this instrument is signed by more than one Borrower, the obligations of Borrowers shall be joint and several." Thereafter, the note also recites that "the reference to Borrower is joint and several and includes all persons primarily or secondarily liable hereunder."

Consistent with the preceding language of the note which imposes joint and several liability on the "undersigned" as "Borrower," each of the signature lines bears the designation of "Borrower." Also consistent with the initial recital in the note that designates *both* Paul Tanner Homes *and* Dan McGraw as the "undersigned," their signatures duly appear thereon, Paul Tanner signing as doing business as Paul Tanner Homes, the first borrower, and Dan McGraw, in his individual capacity, the second borrower.

While it is possible to construe the signatures of both Tanner and McGraw as being for and on behalf of Paul Tanner Homes, in order to do so it is necessary to view the signature block of the note in isolation and without reference to all of the other provisions of the note. To do so is of course contrary to the established principles of contract interpretation discussed *supra*.

It is also to be observed that Paul Tanner Homes is not a legal entity, it being only a "dba" of Paul Tanner. Therefore, Paul Tanner Homes and Paul Tanner are to be considered as one and the same; hence, Tanner's signature appearing on the note as maker clearly establishes his individual liability. Thus, even if it could be said that Dan McGraw was also doing business as Paul Tanner Homes, his signature appearing on the note nevertheless binds him in his individual capacity also.[5]

The judgment of the trial court is vacated and set aside and the case is remanded with direction to grant judgment pursuant to the terms of the note in favor of plaintiff and against McGraw. Costs to plaintiff.

STEWART, HOWE and OAKS, JJ., and J. ALLAN CROCKETT, Retired Justice, concur.

MAUGHAN, J., did not participate herein, CROCKETT, Retired Justice, sat.

3. *Minshew v. Chevron Oil Company*, Utah, 575 P.2d 192 (1978).

4. *Cornwall v. Willow Creek Country Club*, 13 Utah 2d 160, 369 P.2d 928 (1962).

5. See U.C.A., 1953, 70A–3–403(2).