**Rainer Frederick HUCK, Plaintiff and Appellant,**

v.

**Patricia Ann HUCK, Defendant and Respondent.**

No. 19180.

Supreme Court of Utah.

Nov. 4, 1986.

Craig S. Cook, Salt Lake City, for plaintiff and appellant.

Roger D. Sandack, Salt Lake City, for defendant and respondent.

HOWE, Justice:

Plaintiff appeals the property division and award of temporary support and attorney fees made in this divorce case.

The plaintiff, Rainer Huck, and the defendant, Patricia Huck, met and began dating in 1972 while doing graduate work at the University of Utah. During the course of their relationship, defendant became pregnant. Plaintiff suggested that she have an abortion. Defendant, however, wanted to marry plaintiff and give birth to the child. Plaintiff, somewhat reluctantly, agreed to the marriage, and plans were made for a wedding in April of 1975. On April 9, one day prior to the wedding, the parties signed a prenuptial agreement containing the following provisions:

1. All property owned by either party prior to the marriage shall remain the exclusive property and province of such person....

2. [Sets out specific property of each brought into the marriage.]

3. ... [A] mutual agreement as to the disbursement of property acquired after the marriage shall be made by the parties themselves or in the event they cannot agree, that they shall allow a court of law to divide such property....

4. ... [S]hould divorce or legal separation proceedings be filed within two years from the undersigned date, Pat shall totally support any children ... provided, however, that in the event Pat is unable to support said children from her own income Rainer will assume all responsibility and child support, even though any children remain in Pat's custody.

5. It is mutually agreed that neither party shall be responsible or liable for the other party's debts or obligations existing prior to marriage.

6. In the event of divorce or separation Pat specifically waives any alimony or support payments provided that she is capable of self-support at such time.

7. ... [T]his document shall be interpreted under Utah Law....

8. ... [I]f such marriage does not take place then this agreement shall be null and void.

9. The parties hereby acknowledge that each of them has been represented by counsel of their choice and has been advised of their rights and liabilities....

During the marriage, defendant worked and attended school. She paid most of the household expenses, food, medical care and insurance, as well as child care and her own personal expenses. Plaintiff provided the house they lived in and paid the taxes thereon and the utilities except for electricity, which defendant paid. He managed the rental properties he had acquired before the marriage and seven additional properties he acquired during the marriage. The property at 224 Iowa Street, Salt Lake City, was acquired by funds contributed by both plaintiff and defendant, and title was taken as tenants in common. All other properties acquired during the marriage were either obtained by funds generated from the rental properties (and title taken in plaintiff's name alone) or purchased jointly by plaintiff and his attorney.

In April 1979, plaintiff filed for divorce. Defendant received temporary child support of $175 per month and temporary alimony of $75 per month during the pendency of the proceedings. The district court invalidated the prenuptial agreement, finding that defendant had been coerced into signing it. Defendant was awarded custody of their daughter, Sophy, and child support of $200 a month. Along with her separate personal property, she was also awarded real property located at 224 and 215 Iowa Street and 629 Harmony Street in

Salt Lake City, all of which were acquired during the marriage. Plaintiff was ordered to pay defendant's attorney fees in the amount of $2,750. Plaintiff appeals, raising the following issues:

## I. DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR IN FINDING THE PRENUPTIAL AGREEMENT VOID?

The trial court found that defendant was coerced into signing the prenuptial agreement because she was already pregnant and plans for the wedding had been made when she was asked to sign. However, the court also found that invalidating the prenuptial agreement did not prejudice plaintiff. He contends that he was prejudiced by the voiding of the prenuptial agreement in that he was ordered to pay child support and temporary alimony, which defendant had waived in the agreement as long as she was capable of self-support at the time of a divorce. Because defendant had a gross income of $1,140 per month at the time of the divorce, plaintiff contends that the court should have found her capable of self-support and that the failure to do so, coupled with the voiding of the prenuptial agreement, prejudiced him in the amount of child support and temporary alimony he was required to pay.

The agreement only attempted to limit defendant's right to child support in the event that divorce proceedings were filed within two years of the signing of the agreement. The agreement was signed April 9, 1975; plaintiff filed for divorce in April of 1979, four years later. Therefore, even had the agreement been enforced by the trial court, it would not have had any effect on child support. In any event, no agreement between the spouses could act to deprive the child of "the basic and unalienable right to child support, since such right is vested in the minor." *Reick v. Reick,* 652 P.2d 916, 917 (Utah 1982). *See Strong v. Strong,* 548 P.2d 626 (Utah 1976).

As to temporary alimony, defendant waived her right to alimony in the agreement, "provided she was capable of self-support" at the time of the divorce. De-

fendant presented evidence that her expenses exceeded her income by $700. Thus, even under the terms of the prenuptial agreement, the trial court could have properly awarded temporary alimony. An agreement or stipulation between the parties as to alimony is not binding on the court, but serves only as a recommendation; it is within the court's power to modify such an agreement or stipulation at the time of the decree or subsequently. *Callister v. Callister,* 1 Utah 2d 34, 37, 261 P.2d 944, 946 (1953).

Plaintiff does not claim that any other term of the agreement was unsatisfied or that he suffered any other prejudice by the court's failure to enforce the prenuptial agreement. This Court need not reach the issue of whether defendant was coerced into signing the agreement, since even if the trial court erred in so finding, the error was not prejudicial.

Although the validity of the agreement is not dispositive in this case, it should be noted that in general, prenuptial agreements concerning the disposition of property owned by the parties at the time of their marriage are valid so long as there is no fraud, coercion, or material nondisclosure. However, provisions eliminating the payment of child support or alimony in prenuptial agreements are not binding on the court. This judicial discretion allows the parties freedom of contract while preserving the right of the state to insure adequate support for its citizens. *Unander v. Unander,* 265 Or. 102, 506 P.2d 719, 722 (1973).

## II. DID THE COURT ABUSE ITS DISCRETION IN AWARDING ATTORNEY FEES?

In divorce cases, an award of attorney fees must be supported by evidence that it is reasonable in amount and reasonably needed by the party requesting the award. *Beals v. Beals,* 682 P.2d 862 (Utah 1984). Plaintiff contends that there is no evidence to support a finding of financial need on the part of defendant to justify the award of fees to defendant. He presented evidence that her total income from all

sources, including support payments, totalled $1,795 per month and that therefore she should be capable of bearing the cost of litigation.

■ However, defendant had no liquid assets, and even using plaintiff's figures as to her gross income from all sources, her income barely covered her expenses. Her attorney testified at trial as to the reasonableness of the time spent and fees charged. The trial court awarded her less than one-third of the amount she sought. She met her burden of showing financial need and provided evidence that the fees assessed to plaintiff ($2,750) were reasonable.

III. DID THE COURT ERR IN AWARDING CERTAIN REAL PROPERTY ACQUIRED DURING THE MARRIAGE TO DEFENDANT?

Plaintiff contends that all properties acquired during the marriage (except 224 Iowa Street) should be deemed his "separate property" and that defendant should be estopped from claiming any interest in 215 Iowa Street and 629 Harmony Street, which were awarded to her. U.C.A., 1953, § 30-3-5 provides that the court may make "such orders in relation to the children, property and parties ... as may be equitable."

■ Plaintiff's attempt to classify all properties acquired during the marriage as his separate property is of no avail. The fact that title was not in their joint names and that the properties were purchased with funds generated from his other rental properties is not determinative of the distribution to be made.

■ The trial court properly looked to the contributions of the parties during the marriage. Plaintiff's only income was derived from the rental properties he owned and managed. Defendant, though attending school, was employed and paid most of the household expenses, food, medical care, and insurance, as well as child care and her own personal expenses. While plaintiff used his income to acquire additional properties, defendant's funds were consumed in supporting the parties and their child. The

trial court was correct in holding that the properties were marital property that could not have been acquired by plaintiff without defendant's contribution toward household expenses.

The voiding of the prenuptial agreement did not in any way affect the division of property made by the court. As per the terms of the agreement, plaintiff was awarded all real properties he owned prior to the marriage. He also received the increase in value of those properties from amounts expended during the marriage to improve them and reduce or retire mortgages. Plaintiff's argument that all properties acquired during the marriage should be considered his separate property because the down payments came from his separate funds is not persuasive. The prenuptial agreement provided that property acquired during the marriage should be divided by the court. The three properties awarded to defendant were acquired during the marriage. However, plaintiff was given full credit for the cash and personal property he brought into the marriage in the sum of $15,000, part of which ($3,000) he used as a down payment on the 629 Harmony Street property. The decree awarded him $19,000 in cash from the sale proceeds of the Harvard Street property which the parties sold prior to their separation, $1,600 from the sale of a boat, and a $3,000 note, in addition to his car, motorcycles, and laboratory equipment. In addition to giving plaintiff full credit for his premarital $15,000, the court awarded him the long half of the marital property. The division of property properly considered the contribution of the parties and the needs they will have in adjusting to their new situation.

■ There is no merit to plaintiff's contention that defendant should be estopped from claiming any interest in the properties acquired during the marriage. Plaintiff points to several occasions when defendant stated she wanted nothing to do with the properties and claimed no interest therein. However, since the prenuptial agreement clearly gave her an interest, plaintiff could

not have reasonably relied on her gratuitous oral disclaimers.

Decree affirmed.    Costs to defendant.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.