**Rebecca Ann BERMAN, Plaintiff and Respondent,**

v.

**David P. BERMAN, Defendant and Appellant.**

No. 860310–CA.

Court of Appeals of Utah.

Feb. 1, 1988.

---

2. The writer is reminded of Lincoln's observation that calling a horse's tail a leg does not make it a leg.

Dale R. Kent, Salt Lake City, for defendant and appellant.

Rinehart L. Peshell, Midvale, for plaintiff and respondent.

Before BENCH, GREENWOOD and GARFF, JJ.

## OPINION

GARFF, Judge:

Defendant appeals a property distribution awarding plaintiff one-half the equity in a house purchased by defendant prior to the marriage.

Defendant and plaintiff met in 1978. Defendant purchased a house in October 1978. The parties began living together in December 1979, and their two children were born in December 1979 and June 1983. They were subsequently married in January 1984. From the time the parties began living together until their divorce on July 22, 1985, a period of approximately six and one-half years, they had lived together for a total of only twenty-nine months. During the course of their relationship, plaintiff's financial contributions consisted of occasional payments of utility and food bills.

On their wedding day, both parties signed an antenuptial agreement which provided, in pertinent part, that "[a]ll real and personal property owned by either of the parties at the time of their marriage, including the property of the prospective husband's interest in the West Valley Billiard business and its assets, shall be their respective separate property." It also provided that both parties waived any claim to alimony.

The trial court specifically found that the agreement was entered into knowingly and voluntarily, and that the court would follow its terms as far as it was fair. The court then interpreted the agreement as applying only to defendant's business assets, and awarded plaintiff one-half the equity in the house.

Defendant raises the following issues on appeal: (1) was the trial court bound by the antenuptial agreement, (2) did the trial court interpret the antenuptial agreement correctly, and (3) did the trial court abuse its discretion in awarding plaintiff one-half the equity in the home?

The burden is upon defendant to show that the trial court, which is granted a great deal of discretion in divorce proceedings, misunderstood or misapplied the law, resulting in substantial and prejudicial error, or that the evidence clearly preponderated against the findings, or that such a serious inequity has resulted as to manifest a clear abuse of discretion. *English v. English*, 565 P.2d 409, 410 (Utah 1977); *Baker v. Baker*, 551 P.2d 1263, 1265 (Utah 1976). *See also Stettler v. Stettler*, 713 P.2d 699, 701 (Utah 1985).

## I

### Validity of the Antenuptial Agreement

In *Huck v. Huck*, 734 P.2d 417, 419

(Utah 1986),[1] the Utah Supreme Court ruled that antenuptial agreements are enforceable: "[I]n general, prenuptial agreements[2] concerning the disposition of property owned by the parties at the time of their marriage are valid so long as there is no fraud, coercion, or material nondisclosure." Plaintiff argues that defendant fraudulently induced her to sign the agreement on the day they were married by promising that he would put the home in both their names and would void the agreement once a pending paternity action, brought by a third party, was concluded. Plaintiff also argues that one of the reasons for the marriage was to preclude plaintiff from testifying in the paternity suit about defendant's assets. However, the trial court found that "said antenuptial agreement was entered into knowingly and voluntarily...." The trial court is in the best position to assess the evidence, and absent a clear abuse of discretion, this court will not overturn its findings. *Boyle v. Boyle*, 735 P.2d 669, 670 (Utah Ct.App. 1987). Obviously, the trial court found no fraud or undue influence to induce plaintiff to sign the agreement, or it would not have found that plaintiff knowingly and voluntarily entered into it. Therefore, following *Huck*, we conclude that the agreement is valid and binding on the parties.

## II

### Interpretation of the Antenuptial Agreement

Plaintiff argues that the antenuptial agreement only concerned the defendant's business assets, not the house, because the only asset specifically mentioned in the agreement was the billiard business. Defendant argues that the agreement means exactly what it says and exempts "[a]ll real and personal property," including the house, from inclusion in the marital estate.

The trial court, siding with plaintiff, found that the agreement was entered into for the purpose of protecting defendant's business assets only and, therefore, did not include the residence. The court granted plaintiff one-half the equity in the house.

■ Antenuptial agreements are to be construed and treated as are contracts in general. *In re Marriage of Young*, 682 P.2d 1233, 1236 (Colo.Ct.App.1984). They "are in no way different from any other ordinary contract." *O'Dell v. O'Dell*, 238 Iowa 434, 26 N.W.2d 401, 412 (1947).

In interpreting contracts, the principal concern is to determine what the parties intended by what they said. "We do not add, ignore, or discard words in this process; but attempt to render certain the meaning of the provision, [sic] in dispute, [sic] by an objective and reasonable construction of the whole contract." *Mark Steel Corp. v. Eimco Corp.*, 548 P.2d 892, 894 (Utah 1976). The ordinary and usual meaning of the words used is given effect, *Pugh v. Stockdale and Co.*, 570 P.2d 1027, 1029 (Utah 1977), and "[e]ffect is to be given the entire agreement without ignoring any part thereof." *Minshew v. Chevron Oil Co.*, 575 P.2d 192, 194 (Utah 1978). *See also Larrabee v. Royal Dairy Prod. Co.*, 614 P.2d 160, 163 (Utah 1980).

■ Paragraph 1 of the agreement states: "All real and personal property owned by either of the parties at the time of their marriage, including the property of the prospective husband's interest in the West Valley Billiards business and its assets, shall be their respective separate property." The home was owned by defendant prior to the marriage. The language clearly delineates *all* real and personal property owned prior to the marriage as the separate property of the parties. Paragraph 5 provides: "It is understood that each party to this agreement shall control his or her own personal estate, and do with the properties whatsoever he or she wishes...." In paragraph 6, the fol-

1. The instant appeal was filed approximately one year prior to the *Huck* opinion.

2. The terms "antenuptial" and "prenuptial" are used interchangeably, and refer to things done before marriage. *See In re Marriage of Young,* 682 P.2d 1233, 1236 (Colo.Ct.App.1984) ("antenuptial"); *O'Dell v. O'Dell,* 238 Iowa 434, 26 N.W.2d 401, 412 (1947) ("antenuptial" and "prenuptial"); and *Huck v. Huck,* 734 P.2d 417 (Utah 1986) ("prenuptial").

lowing wording is used: "and each of the parties is to have the full right to dispose of and sell any and all real or personal property now or hereafter owned by them...." Reading all of the provisions together, the intent of the parties is clearly to preserve their separate holdings for themselves. The house should have been preserved as the separate property of defendant. We find the trial court erred when it did not include the house in the antenuptial agreement.

### III

### *Award of Equity in the Home*

Under the antenuptial agreement, plaintiff was not entitled to one-half the equity in the house. The house was defendant's sole property prior to the marriage and should have so remained. However, *Huck*, while specifically holding that disposition of property under an antenuptial agreement is valid, states that such an agreement cannot bind the court as to alimony. "[P]rovisions eliminating the payment of child support or alimony in prenuptial agreements are not binding on the court. This judicial discretion allows the parties freedom of contract while preserving the right of the state to insure adequate support for its citizens." *Huck*, 734 P.2d at 419. Therefore, it may be appropriate for the trial court to reconsider the question of alimony in view of our decision that plaintiff is not entitled to a one-half interest in the house.

Reversed and remanded for proceedings consistent with this opinion. Costs to defendant.

BENCH and GREENWOOD, JJ., concur.