**SLW/UTAH, L.C., Plaintiff and Appellee,**

v.

**Jerry W. GRIFFITHS and Juna E. Griffiths, Defendants and Appellants.**

No. 971497–CA.

Court of Appeals of Utah.

Oct. 22, 1998.

Jeffrey L. Silvestrini, Cohne, Rappaport & Segal, Salt Lake City, for Defendants and Appellants.

Ross C. Anderson, Anderson & Karrenburg, Salt Lake City, for Plaintiff and Appellee.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

BENCH, Judge:

SLW/Utah, L.C. (SLW) began this action for declaratory relief regarding a lease agreement between SLW and Jerry W. Griffiths and Juna E. Griffiths (the Griffithses or the tenants). The trial court granted summary judgment in favor of SLW's claim that the lease unambiguously assigns to the Griffithses the duty to replace the leased building's roof. We affirm.

## BACKGROUND

In 1986, the principals of SLW bought a building from the Griffithses. The Griffithses then leased back the building from SLW. The lease agreement, which began in 1986 and continues to 2001, provides that the tenants "shall maintain and keep in repair (and shall put into repair where necessary) the walls and roof of the building." The agreement also requires the tenants to surrender the premises "in as good condition as it was at the beginning of the term, reasonable wear excepted." In 1996, the roof failed. To return the building to a usable condition, the roof had to be replaced.

SLW commenced this action for declaratory relief to require the tenants to install a new roof. To protect their property, the tenants installed a new roof and counterclaimed for their costs, arguing that SLW had the duty to replace the roof. In granting SLW's summary judgment motion, the trial court ruled that the lease unambiguously requires the tenants to replace the roof.

## ISSUES

The tenants argue: first, that the trial court erred by using parol evidence to inter-

---

pret the lease; second, that the trial court erred in its interpretation of the lease; and finally, that the trial court erred by ignoring their equity argument.

## ANALYSIS

### Parol Evidence

The tenants argue that the trial court impermissibly considered parol evidence offered by SLW. "The interpretation of a written contract is first a question of law determined by the words of the agreement.... Accordingly, whether an ambiguity exists is also a question of law to be decided by the trial court before considering extrinsic evidence." *Republic Group, Inc. v. Won–Door Corp.*, 883 P.2d 285, 294 (Utah Ct.App. 1994) (citations omitted).

SLW claimed that the parties entered into a "net" lease and offered factual evidence to support that claim. Although the trial court had that extrinsic evidence before it, the court's order clearly showed that it reached its conclusion without considering any extrinsic evidence. After finding the lease unambiguous, the trial court determined that the lease terms placed the burden of replacing the roof on the tenants. We therefore conclude that the trial court did not impermissibly consider extrinsic evidence.

### Contract Interpretation

 Next, the tenants argue that the trial court erred, as a matter of law, in its interpretation of the lease. Specifically, the tenants argue that the court erroneously determined that the lease requires the tenants to replace the roof.

"In interpreting contracts, 'the ordinary and usual meaning of the words used is given effect.'" *Warburton v. Virginia Beach Fed. Sav. & Loan Ass'n*, 899 P.2d 779, 782 (Utah Ct.App.1995) (quoting *Berman v. Berman*, 749 P.2d 1271, 1273 (Utah App.1988)). Further, "[t]he ordinary meaning of contract terms is often best determined through standard, non-legal dictionaries." *Id.* Here, the lease calls for the tenants to "maintain and keep in repair (and shall put in repair where necessary) the walls and roof of the building."

The dictionary defines maintain as "[t]o preserve or keep in a given existing condition, as of efficiency or good repair." *Webster's II New College Dictionary* 660 (1995). "To repair is to 'restore by replacing a part or putting together what is torn or broken.'" *Union Pac. R.R. Co. v. Auditing Div.*, 842 P.2d 876, 885 (Utah 1992) (quoting *Webster's Ninth New Collegiate Dictionary* 998 (1984)). Here, however, the lease does not simply provide that the tenants shall maintain and repair the roof. It provides that the tenants shall maintain the roof, keep the roof in repair, and put the roof in repair where necessary. Thus, under the plain meaning of the terms, the lease clearly contemplates something more than simple repairs.

*Wolfe v. White*, 119 Utah 183, 225 P.2d 729 (1950), controls this issue. The controversy in *Wolfe* centered around who must bear "the cost of replacement of the entire roof ... under the terms of the lease." *Id.* at 730. The lease provided that "the lessors shall have the obligation to keep the roof of the leased premises in good condition and repair." *Id.* Although that lease did not expressly include a provision specifying who should *put* the roof in repair, the supreme court decided that the quoted provisions included the duty to put the roof in good repair. *See id.* at 732. The court therefore ruled that, under that lease provision, it was the lessor's duty to replace the roof. *See id.*

The lease in the present case expressly provides what was only implied in *Wolfe.* Here, the lease expressly states that the tenants shall put the roof in repair where necessary. The trial court "determined that 'put into repair' had the meaning of replacing" and ordered summary judgment in favor of SLW. We agree. The lease requires the tenants to replace the roof where necessary. The trial court therefore did not err in its interpretation of the lease.

The tenants argue that *Wolfe* stands only for the proposition that the responsible party must put the roof in good condition and repair at the beginning of the lease. A close reading of the case reveals that the *Wolfe* court ruled that the responsible party must "see that a roof in good condition and repair

**536**

was available to them at all times, including at the time they were to begin occupancy." *Id.* at 732. Thus, the *Wolfe* court specifically ruled that the responsible party must put the roof in repair throughout the lease term.

 The tenants also argue that the trial court erred because it did not construe separate clauses of the lease together. "Each contract provision is to be considered in relation to all of the others, with a view toward giving effect to all and ignoring none." *Utah Valley Bank v. Tanner,* 636 P.2d 1060, 1061–62 (Utah 1981). The tenants argue that the surrender clause excepts their liability because the roof failed from normal wear and tear. However, the surrender clause expressly provides that "[t]he Premises shall be surrendered to Landlord *at the end of the term* in as good condition as it was in the beginning of the term, reasonable wear excepted." (Emphasis added.) Thus, the surrender clause does not even take effect until the tenants surrender the premises in 2001. Furthermore, as discussed above, the maintenance clause provides unambiguously that the tenants must keep or put the roof in sound condition. To construe the lease to except repairs necessitated by reasonable wear would have the effect of undoing an express provision of the ongoing maintenance clause.

Thus, the trial court properly interpreted the lease. The lease's unambiguous terms require the tenants to replace the failed roof.

### Equity Argument

 The tenants also argue that it is inequitable to require the tenants to pay for a new roof that will mostly benefit SLW. Given the undisputed facts, the tenants have provided no basis for allowing them to avoid the unambiguous provisions of the lease.

> Generally speaking, neither of the parties, nor the court, has any right to ignore or modify conditions which are clearly expressed merely because it may subject one of the parties to hardship, but they must be enforced "in accordance with the intention as ... manifested by the language used by the parties to the contract."

*Ephraim Theatre Co. v. Hawk,* 7 Utah 2d 163, 166, 321 P.2d 221, 223 (1958) (citation omitted). We therefore conclude that the tenants' equity argument has no merit.

### CONCLUSION

The trial court did not consider extrinsic evidence when determining that the lease unambiguously provides that the tenants bear the duty to replace the roof. Furthermore, the trial court correctly interpreted the lease by giving effect to all the lease terms. Finally, the tenants' equity argument has no merit.

We therefore affirm the trial court's order granting summary judgment in favor of SLW.

GREENWOOD and JACKSON, JJ., concur.